**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **MARGIE LOUISE WESCOTT, as the** | ) | |
| **Personal Representative for the** | ) | |
| **ESTATE OF CHARLES WESCOTT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **MICHELIN NORTH AMERICA, INC.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MICHELIN NORTH AMERICA** | ) | |
| **(CANADA), INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Margie Wescott ("Plaintiff"), as Personal Representative for the Estate of Charles Wescott, by counsel and for her Complaint against Defendants Michelin North America, Inc. ("MNA") and Michelin North America (Canada), Inc. ("MC") (collectively, "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332.

2.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Eastern District of Virginia.

3.     Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C), because a substantial part

of the acts and omissions giving rise to Plaintiff's claims occurred within the territorial bounds of the Eastern Division.

## PARTIES

4.       Plaintiff is a natural person and resident of the Commonwealth of Virginia. Plaintiff is the wife of Charles Wescott and has been appointed the Personal Representative for the Estate of Charles Wescott.  As such, Plaintiff is the proper party to bring this civil action on behalf of the survivors of the Charles Wescott ("Mr. Wescott") and on behalf of the Estate of Charles Wescott.

5.       MNA is a foreign corporation engaged in the business of designing, manufacturing, distributing, and/or selling tires, including a certain **Michelin XZA3 11 R22.5 bearing Department of Transportation (DOT) code M53TB65X0311** (the "Subject Tire"). MNA operates, conducts, engages in, or carries on business or a business venture in the Commonwealth of Virginia and has a registered agent in the Commonwealth of Virginia.

6.       MC is a foreign corporation engaged in the business of designing, manufacturing, distributing and/or selling tires, including a certain **Michelin XZA3 11 R22.5 bearing Department of Transportation (DOT) code M53TB65X0311** (the "Subject Tire").  MC operates, conducts, engages in, or carries on business or a business venture in the Commonwealth of Virginia and has a registered agent in the Commonwealth of Virginia.

## STATEMENT OF FACTS

7.       This cause of action arises out of a single vehicle motor vehicle accident that occurred on June 20, 2019, which involved a 2006 Hino 4x2 COE bearing Vehicle Identification Number (VIN) 5PVNV8JTX625S0146 (hereinafter referred to as the "Subject Truck").

8.       At the time of the motor vehicle accident, the passenger side steer tire affixed to

the "Subject Truck was a Michelin XZA3 11 R22.5 bearing Department of Transportation (DOT) code M53TB65X0311 (the "Subject Tire").

9.      The Subject Tire was designed by MNA and manufactured at MC's Waterville, Nova Scotia, Canada plant and distributed and sold in the United States by MNA.  Therefore, the Subject Tire was within the stream of commerce that ultimately led to the Subject Tire being affixed to the Subject Truck that Mr. Wescott was operating on June 20, 2019.

10.     On June 20, 2019, Mr. Wescott was lawfully operating the Subject Truck westbound on I-64, approximately 2 miles southeast of Route 30 (Old Stage Road) in James City County, Virginia.  Suddenly and without any warning, the Subject Tire's integrity failed and the tread and belt system separated from the carcass of the Subject Tire.

11.     As a direct result of the Subject Tire's failure, the Subject Truck became unstable and Mr. Wescott lost control of the vehicle.  The Subject Truck veered to the left and rolled over before finally coming to a rest on westbound I-64.

12.     Mr. Wescott was transported to VCU Medical Center in Richmond, Virginia, where he received treatment for the following injuries:

   a.   Traumatic brain injury;

   b.   Subdural bleeding;

   c.   Multiple rib fractures;

   d.   Collapsed lung; and

   e.   Dislocated shoulder.

13.     Mr. Wescott remained in the Intensive Care Unit at VCU Medical Center from June 20, 2019, to July 14, 2019.

14.     On July 15, 2019, Mr. Wescott was transferred to Select Specialty Hospital in

3

Newport News, Virginia, for continued medical management, physical therapy, occupational therapy, and speech therapy.

15.     On September 13, 2019, Mr. Wescott was transferred again to JFK Johnson Rehabilitation Institute in Edison, New Jersey, where he stayed until January 23, 2020.

16.     Mr. Wescott was subsequently transferred to Shore Health and Rehabilitation Center in Accomack County, Virginia, where he passed away on March 14, 2020.

17.     The catastrophic injuries sustained by Mr. Wescott in the June 20, 2019, accident ultimately caused his death on March 14, 2020.

18.     Alternatively, the aforementioned catastrophic injuries did not cause Mr. Wescott's death on March 14, 2020.

19.     Defendants' design and manufacture of the Subject Tire rendered the Subject Tire unreasonably dangerous for its intended uses and for any of its foreseeable uses or misuses at the time it was sold by Defendants.

20.     Specifically, upon information and belief, MNA's design of the Subject Tire was defective and unreasonably dangerous in that MNA chose a tire construction with three steel belts.  The peripheral mass of the additional third belt increases the centrifugal forces developed in the rotating tire, thereby reducing the Subject Tire's durability, especially at highway speeds. The increased centrifugal forces, caused by the three belt design, increased the forces on various components of the Subject Tire over time and made it susceptible to (and ultimately caused) the tread/belt separation that occurred on June 20, 2019.

21.     MNA and MC manufactured the Subject Tire in a defective and unreasonably dangerous manner in that there was an inadequate curing/bonding between the internal components of the Subject Tire – specifically between the belts and carcass of the tire.

22.     The defective and unreasonably dangerous condition of the Subject Tire, as alleged herein, directly and proximately caused the Subject Tire's failure and the resulting accident that took place on June 20, 2019.

23.     When Defendants manufactured and sold the Subject Tire they knew or should have known the Subject Tire was defective and unreasonably dangerous for its ordinary uses, intended uses, and all other foreseeable uses and misuses and could suffer a tread separation which, in turn, would lead to loss of vehicle control and serious injury to vehicle occupants.

24.     At all times relevant, Defendants knew or should have known that the defective condition of the Subject Tire created a foreseeable and unreasonable risk of harm, including the likelihood of serious injury and/or death to those occupying any vehicle to which the Subject Tire was affixed.

25.     At all times relevant, reasonable alternative designs and processes of manufacturing and testing that were economically and technologically feasible, existed within the tire industry and were within actual and constructive knowledge and control of Defendants.

26.     The decedent, Mr. Wescott, did not know about, and had no reason to know about, the defective and unreasonably dangerous condition of the Subject Tire.

**COUNT I**
**NEGLIGENCE**
**WRONGFUL DEATH**
**(MICHELIN NORTH AMERICA, INC.)**

27.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

28.     At all relevant times, MNA owed consumers and users of its products, including Mr. Wescott, a duty to design its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package

on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

29.     At all relevant times, MNA owed consumers and/or intended users of the Subject Tire, including Mr. Wescott, a duty to manufacture, assemble, inspect, and/or test its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

30.     At all relevant times, MNA owed a duty to warn consumers and/or intended users of the Subject Tire, including Mr. Wescott, of known or suspected defects that rendered the Subject Tire unreasonably dangerous to use.  Upon information and belief, MNA knew or had reason to know that the Subject Tire posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and other sources of information to be developed in discovery.  To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

31.     MNA breached the above-cited duties by carrying out one or more of the following negligent acts:

   a.  Failing to use due care in designing the Subject Tire's tire construction so as to prevent excessive forces on Subject Tire's components and deteriorating the same thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

b.  Failing to exercise due care in manufacturing the Subject Tire, which in turn led to an unreasonable and inadequate curing/bonding of the Subject Tire's tread to the remainder of the Subject Tire's carcass and thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

c.  Failing to make reasonable tests and/or inspections to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail as described above;

d.  Negligently failing to warn users of the Subject Tire, including Mr. Wescott, of said defective, hazardous, and unreasonably dangerous conditions relating to tire tread/belt separation which MNA knew or should have known through the exercise of ordinary care;

e.  Failing to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to sustain sudden, unexpected tread/belt separations, while in the possession of MNA, and during which times employees, servants or agents of MNA had an opportunity to inspect, service and work on the Subject Tire;

f.  Failing to warn users about tire aging, tire degrading, oxidation, and ozonation which occurs as a tire ages and makes the tire more likely to fail during normal use, including an increased likeliness to experience a tire tread/belt separation as a result of aging, when MNA knew or should have known through the exercise of ordinary care of such a danger;

g.  Negligently failing to design and manufacture a tire that was robust enough for its

intended use as a tire on a commercial truck; and

    h.   Other negligent acts and omissions to be developed in the course of discovery.

32.    MNA knew or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Tire would give rise to serious bodily injuries to such users.

33.    The Subject Tire's defective condition was latent and Mr. Wescott was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

34.    MNA's negligence directly and proximately caused the accident that occurred on June 20, 2019, and the resulting catastrophic injuries and ultimate March 14, 2020, death of Mr. Wescott.

35.    As a direct and proximate result of the negligence of MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

    a.   Loss of support and services;

    b.   Loss of companionship;

    c.   Mental pain and suffering; and

    d.   Medical as well as funeral expenses.

36.    As a direct and proximate result of the negligence of MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering, and will suffer in the future the following damages:

    a.   Loss of prospective net accumulations; and

    b.   Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against MNA for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**WRONGFUL DEATH**
**(MICHELIN NORTH AMERICA, INC.)**

37.    Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

38.    At all relevant times, MNA was in the business of marketing, selling, and distributing tires, including the Subject Tire causing Mr. Wescott's injuries and death.

39.    MNA knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Truck) and all other reasonably foreseeable uses and misuses.

40.    At all relevant times, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MNA.

41.    MNA breached the above-referenced implied warranties as to the Subject Tire. Specifically, at the time the Subject Tire left MNA's possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

     a.  The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Subject Tire unreasonably susceptible to, and ultimately caused the tread/belt separation that occurred on June 20, 2019; and

      b.  The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

42.    Mr. Wescott, as the operator and/or occupant of the Subject Truck, was a person who would foreseeably be injured by MNA's breach of the implied warranty referenced in this Count. MNA's breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on June 20, 2019, and the resulting catastrophic injuries and ultimate death of Mr. Wescott.

43.    As a direct and proximate result of the above-referenced breaches of warranty by MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

      a.  Loss of support and services;

      b.  Loss of companionship;

      c.  Mental pain and suffering; and

      d.  Medical as well as funeral expenses.

44.    As a direct and proximate result of the breaches of warranty by MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering, and will suffer in the future the following damages:

      a.  Loss of prospective net accumulations; and

      b.  Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against MNA for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.


### COUNT III
### BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### WRONGFUL DEATH
### (MICHELIN NORTH AMERICA, INC.)

45.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

46.     At all times relevant, MNA was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's injuries and death. Upon information and belief, MNA knew or had reason to know that the Subject Tire would be affixed to a commercial truck at the time they sold the Subject Tire and that the purchaser was in fact relying on MNA's skill, judgment, and implied warranty of the Subject Tire's fitness for that particular purpose.

47.     Accordingly, MNA impliedly warranted that the Subject Tire was suitable for the particular purpose of being affixed to a commercial vehicle.

48.     At all relevant times, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MNA in operating the Subject Truck.

49.     MNA breached the above-referenced implied warranty as to the Subject Tire in that the Subject Tire was unreasonably dangerous and unfit to be affixed to a commercial truck at the time it left MNA's possession for the following reasons:

a. The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

b. The Subject Tire's tread and belt package was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

50.     Mr. Wescott, as the operator and/or occupant of a commercial truck, was a person who would foreseeably be injured by MNA's breach of the implied warranty referenced in this Count. MNA's breach of that warranty directly and proximately caused the accident on June 20, 2019, and the resulting catastrophic injuries and ultimate death of Mr. Wescott.

51.     As a direct and proximate result of the above-referenced breaches of warranty by MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

a. Loss of support and services;

b. Loss of companionship;

c. Mental pain and suffering; and

d. Medical as well as funeral expenses.

52.     As a direct and proximate result of the above-referenced breaches of warranty by MNA, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering, and will suffer in the future the following damages:

    a.   Loss of prospective net accumulations; and

    b.   Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against MNA for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT IV**
**NEGLIGENCE**
**SURVIVAL ACTION**
**(MICHELIN NORTH AMERICA, INC.)**

53.    Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

54.    At all relevant times, MNA owed consumers and users of its products, including Mr. Wescott, a duty to design its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

55.    At all relevant times, MNA owed consumers and users of its products, including Mr. Wescott, a duty to manufacture, assemble, inspect, and/or test its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

56.    At all relevant times, MNA owed a duty to warn consumers and/or intended users

of the Subject Tire, including Mr. Wescott, of known or suspected defects that rendered the Subject Tire unreasonably dangerous to use.  Upon information and belief, MNA knew or had reason to know that the Subject Tire posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and other sources of information to be developed in discovery.  To the extent MNA did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

57.    MNA breached the above-cited duties by carrying out one or more of the following negligent acts:

a.  Failing to use due care in designing the Subject Tire's tire construction so as to prevent excessive forces on Subject Tire's components and deteriorating the same thereby rendering the Subject Tire unreasonably susceptible to (and  causing) the tread-belt separation that occurred on June 20, 2019;

b.  Failing to exercise due care in manufacturing the Subject Tire, which in turn led to an unreasonable and inadequate curing/bonding of the Subject Tire's tread to the remainder of the Subject Tire's carcass and thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

c.  Failing to make reasonable tests and/or inspections to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail as described above;

d.  Negligently failing to warn users of the Subject Tire, including Mr. Wescott, of said defective, hazardous, and unreasonably dangerous conditions relating to tire tread/belt separation which MNA knew or should have known through the

14

exercise of ordinary care;

e.  Failing to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to sustain sudden, unexpected tread/belt separations, while in the possession of MNA, and during which times employees, servants or agents of MNA had an opportunity to inspect, service and work on the Subject Tire;

f.  Failing to warn users about tire aging, tire degrading, oxidation, and ozonation which occurs as a tire ages and makes the tire more likely to fail during normal use, including an increased likeliness to experience a tire tread/belt separation as a result of aging, when MNA knew or should have known through the exercise of ordinary care of such a danger;

g.  Negligently failing to design and manufacture a tire that was robust enough for its intended use as a tire on a commercial truck; and

h.  Other negligent acts and omissions to be developed in the course of discovery.

58.     MNA knew or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Tire would give rise to serious bodily injuries to such users.

59.     The Subject Tire's defective condition was latent and Mr. Wescott was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

60.     MNA's negligence directly and proximately caused the accident that occurred on June 20, 2019, and the resulting catastrophic injuries sustained by Mr. Wescott.

61.     As a direct and proximate result of MNA's negligence, Mr. Wescott was injured

and suffered the following damages:

    a.  Serious and permanent bodily injury;

    b.  Physical disfigurement;

    c.  Physical pain and mental anguish;

    d.  Inconvenience;

    e.  Medical expenses.

Accordingly, Plaintiff demands judgment against MNA for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**SURVIVAL ACTION**
**(MICHELIN NORTH AMERICA, INC.)**

62.    Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

63.    At all relevant times, MNA was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's catastrophic injuries.

64.    MNA knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Truck) and all other reasonably foreseeable uses and misuses.

65.    At all relevant times, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MNA.

66.    MNA breached the above-referenced implied warranties as to the Subject Tire. Specifically, at the time the Subject Tire left MNA's possession, it was not of merchantable

16

quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

     a. The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Subject Tire unreasonably susceptible to, and ultimately caused the tread/belt separation that occurred on June 20, 2019; and

     b. The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

67.    Mr. Wescott, as the operator and/or occupant of the Subject Truck, was a person who would foreseeably be injured by MNA's breach of the implied warranty referenced in this Count. MNA's breach of the warranty of merchantability, as alleged herein, directly and proximately caused the accident on June 20, 2019, and Mr. Wescott's resulting catastrophic injuries.

68.    As a direct and proximate result of MNA's negligence, Mr. Wescott was injured and suffered the following damages:

     a. Serious and permanent bodily injury;

     b. Physical disfigurement;

     c. Physical pain and mental anguish;

     d. Inconvenience;

     e. Medical expenses.

Accordingly, Plaintiff demands judgment against MNA for damages, together with

interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

## <u>COUNT VI</u>
## BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## SURVIVAL ACTION
## (MICHELIN NORTH AMERICA, INC.)

69.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

70.     At all times relevant, MNA was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's catastrophic injuries. Upon information and belief, MNA knew or had reason to know that the Subject Tire would be affixed to a commercial truck at the time they sold the Subject Tire and that the purchaser was in fact relying on MNA's skill, judgment, and implied warranty of the Subject Tire's fitness for that particular purpose.

71.     Accordingly, MNA impliedly warranted that the Subject Tire was suitable for the particular purpose of being affixed to a commercial vehicle.

72.     At all relevant times, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MNA in operating the Subject Truck.

73.     MNA breached the above-referenced implied warranty as to the Subject Tire in that the Subject Tire was unreasonably dangerous and unfit to be affixed to a commercial truck at the time it left MNA's possession for the following reasons:

      a.   The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

b. The Subject Tire's tread and belt package was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

74. Mr. Wescott, as the operator and/or occupant of a commercial truck, was a person who would foreseeably be injured by MNA's breach of the implied warranty referenced in this Count. MNA's breach of that warranty directly and proximately caused the accident on June 20, 2019, and Mr. Wescott's resulting catastrophic injuries.

75. As a direct and proximate result of MNA's negligence, Mr. Wescott was injured and suffered the following damages:

a. Serious and permanent bodily injury;

b. Physical disfigurement;

c. Physical pain and mental anguish;

d. Inconvenience;

e. Medical expenses.

Accordingly, Plaintiff demands judgment against MNA for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

### COUNT VII
### NEGLIGENCE
### WRONGFUL DEATH
### (MICHELIN NORTH AMERICA (CANADA), INC.)

76. Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

77. At all times relevant, MC owed to foreseeable consumers and users of its products, including Mr. Wescott, a duty to design its tires, including the Subject Tire described

above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce.  To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

78.    At all times relevant, MC owed consumers and users of its products, including Mr. Wescott, a duty to manufacture, assemble, inspect, and/or test its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

79.    At all times relevant, MC owed a duty to warn consumers and/or intended users of the Subject Tire, including Mr. Wescott, of known or suspected defects that rendered the Subject Tire unreasonably dangerous to use. Upon information and belief, MC knew or had reason to know that the Subject Tire posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and other sources of information to be developed in discovery.  To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

80.    MC breached the above-cited duties by carrying out one or more of the following negligent acts:

    a.   Failing to use due care in designing the Subject Tire's tire construction so as to prevent excessive forces on Subject Tire's components and deteriorating the same, thereby rendering the Subject Tire unreasonably susceptible to (and

ultimately causing) the tread-belt separation that occurred on June 20, 2019;

b.  Failing to exercise due care manufacturing the Subject Tire, which in turn, led to an unreasonable and inadequate curing/bonding of the Subject Tire's tread to the remainder of the Subject Tire's carcass and thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

c.  Failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail as described above;

d.  Negligently failing to warn users of the Subject Tire, including Mr. Wescott, of said defective, hazardous, and unreasonably dangerous conditions relating to tire tread/belt separation which MC knew or should have known through the exercise of ordinary care;

e.  Failing to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to sustain sudden, unexpected tread/belt separations, while in the possession of MC, and during which times employees, servants, or agents of MC had an opportunity to inspect, service, and work on the subject tire;

f.  Failing to warn users about tire aging, tire degrading, oxidation, and ozonation which occurs as a tire ages and makes the tire more likely to fail during normal use, including an increased likeliness to experience a tire tread/belt separation as a result of aging, when MC knew or should have known through the exercise of ordinary care of such a danger;

g.  Negligently failing to design and manufacture a tire that was robust enough for its intended use as a tire on a commercial truck; and

h.  Other negligent acts and omissions to be developed in the course of discovery.

81.    MC knew or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Tire would give rise to serious bodily injuries to such users.

82.    The Subject Tire's defective condition was latent and Mr. Wescott was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

83.    MC's negligence directly and proximately caused the accident that occurred on June 20, 2019, and the resulting catastrophic injuries and ultimate death of Mr. Wescott.

84.    As a direct and proximate result of the negligence of MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

a.  Loss of support and services;

b.  Loss of companionship;

c.  Mental pain and suffering; and

d.  Medical as well as funeral expenses.

85.    As a direct and proximate result of the negligence of the MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering, and will suffer in the future the following damages:

a.  Loss of prospective net accumulations; and

b.  Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against MC for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
## WRONGFUL DEATH
## (MICHELIN NORTH AMERICA (CANADA), INC.)

86.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

87.     At all times relevant, MC was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's injuries and death.

88.     MC knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Truck) and all other reasonably foreseeable uses and misuses.

89.     At all times relevant, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MC.

90.     MC breached the above-referenced implied warranties as to the Subject Tire. Specifically, at the time the Subject Tire left MC's possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

   a.   The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Subject Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

b.  The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

91.  Mr. Wescott, as the operator and/or occupant of the Subject Truck, was a person who would foreseeably be injured by MC's breach of the implied warranty referenced in this Count. MC's breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on June 20, 2019, and the resulting catastrophic injuries and ultimate death of Mr. Wescott.

92.  As a direct and proximate result of the above-referenced breaches of warranty by MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

a.  Loss of support and services;

b.  Loss of companionship;

c.  Mental pain and suffering; and

d.  Medical as well as funeral expenses.

93.  As a direct and proximate result of the above-referenced breaches of warranty by MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering, and will suffer in the future the following damages:

a.  Loss of prospective net accumulations; and

b.  Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against the MC for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

## COUNT IX
## BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## WRONGFUL DEATH
## (MICHELIN NORTH AMERICA (CANADA), INC.)

94.     Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

95.     At all times relevant hereto, MC was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's injuries and death. Upon information and belief, MC knew or had reason to know that the Subject Tire would be affixed to a commercial truck at the time they sold the Subject Tire and that the purchaser was in fact relying on MC's skill, judgment, and implied warranty of the Subject Tire's fitness for that particular purpose.

96.     Accordingly, MC impliedly warranted that the Subject Tire was suitable for the particular purpose of being affixed to a commercial vehicle.

97.     At all times relevant, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MC in operating the Subject Truck.

98.     MC breached the above-referenced implied warranty as to the Subject Tire in that the Subject Tire was unreasonably dangerous and unfit to be affixed to a commercial truck at the time it left MC's possession for the following reasons:

      a.   The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

    b.   The Subject Tire's tread and belt package was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

99.    Mr. Wescott, as the operator and/or occupant of a commercial truck, was a person who would foreseeably be injured by MC's breach of the implied warranty referenced in this Count. MC's breach of that warranty directly and proximately caused the accident on June 20, 2019, and the resulting catastrophic injuries and ultimate death of Mr. Wescott.

100.    As a direct and proximate result of the above-referenced breaches of warranty by MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and Plaintiff has suffered, is suffering, and will suffer in the future the following damages:

    a.   Loss of support and services;

    b.   Loss of companionship;

    c.   Mental pain and suffering; and

    d.   Medical as well as funeral expenses.

101.    As a direct and proximate result of the above-referenced breaches of warranty by MC, Mr. Wescott suffered catastrophic injuries and ultimately died from the subject incident on June 20, 2019, and his estate has suffered, is suffering and will suffer in the future the following damages:

    a.   Loss of prospective net accumulations; and

    b.   Medical and funeral bills and expenses charged to the estate.

Accordingly, Plaintiff demands judgment against MC for damages, together with interest

and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT X**
**NEGLIGENCE**
**SURVIVAL ACTION**
**(MICHELIN NORTH AMERICA (CANADA), INC.)**

102.    Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

103.    At all times relevant, MC owed to foreseeable consumers and users of its products, including Mr. Wescott, a duty to design its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce.  To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

104.    At all times relevant, MC owed consumers and users of its products, including Mr. Wescott, a duty to manufacture, assemble, inspect, and/or test its tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

105.    At all times relevant, MC owed a duty to warn consumers and/or intended users of the Subject Tire, including Mr. Wescott, of known or suspected defects that rendered the Subject Tire unreasonably dangerous to use. Upon information and belief, MC knew or had reason to know that the Subject Tire posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and

other sources of information to be developed in discovery.  To the extent MC did not owe this duty under existing Virginia law, it assumed such a duty by virtue of its conduct.

106.   MC breached the above-cited duties by carrying out one or more of the following negligent acts:

a. Failing to use due care in designing the Subject Tire's tire construction so as to prevent excessive forces on Subject Tire's components and deteriorating the same, thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

b. Failing to exercise due care manufacturing the Subject Tire, which in turn, led to an unreasonable and inadequate curing/bonding of the Subject Tire's tread to the remainder of the Subject Tire's carcass and thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on June 20, 2019;

c. Failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail as described above;

d. Negligently failing to warn users of the Subject Tire, including Mr. Wescott, of said defective, hazardous, and unreasonably dangerous conditions relating to tire tread/belt separation which MC knew or should have known through the exercise of ordinary care;

e. Failing to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to sustain sudden, unexpected tread/belt separations, while in the possession of MC, and during which times

employees, servants, or agents of MC had an opportunity to inspect, service, and work on the subject tire;

f.   Failing to warn users about tire aging, tire degrading, oxidation, and ozonation which occurs as a tire ages and makes the tire more likely to fail during normal use, including an increased likeliness to experience a tire tread/belt separation as a result of aging, when MC knew or should have known through the exercise of ordinary care of such a danger;

g.   Negligently failing to design and manufacture a tire that was robust enough for its intended use as a tire on a commercial truck; and

h.   Other negligent acts and omissions to be developed in the course of discovery.

107.   MC knew or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Tire would give rise to serious bodily injuries to such users.

108.   The Subject Tire's defective condition was latent and Mr. Wescott was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

109.   MC's negligence directly and proximately caused the accident that occurred on Jun 20, 2019, and Mr. Wescott's resulting catastrophic injuries.

110.   As a direct and proximate result of MNA's negligence, Mr. Wescott was injured and suffered the following damages:

a.   Serious and permanent bodily injury;

b.   Physical disfigurement;

c.   Physical pain and mental anguish;

d.   Inconvenience;

e.   Medical expenses.

Accordingly, Plaintiff demands judgment against MC for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

## COUNT XI
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
## SURVIVAL ACTION
## (MICHELIN NORTH AMERICA (CANADA), INC.)

111.   Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

112.   At all times relevant, MC was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's catastrophic injuries.

113.   MC knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to a pick-up truck like the Subject Truck) and all other reasonably foreseeable uses and misuses.

114.   At all times relevant, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MC.

115.   MC breached the above-referenced implied warranties as to the Subject Tire. Specifically, at the time the Subject Tire left MC's possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses for the following reasons:

    a.   The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Subject Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

    b.   The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

116.    Mr. Wescott, as the operator and/or occupant of the Subject Truck, was a person who would foreseeably be injured by MC's breach of the implied warranty referenced in this Count. MC's breach of the warranty of merchantability, as alleged herein, directly and proximately caused the accident on June 20, 2019, and Mr. Wescott's resulting catastrophic injuries.

117.    As a direct and proximate result of MNA's negligence, Mr. Wescott was injured and suffered the following damages:

    a.   Serious and permanent bodily injury;

    b.   Physical disfigurement;

    c.   Physical pain and mental anguish;

    d.   Inconvenience;

    e.   Medical expenses.

Accordingly, Plaintiff demands judgment against MC for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

**COUNT XII**
**BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**SURVIVAL ACTION**
**(MICHELIN NORTH AMERICA (CANADA), INC.)**

118.    Plaintiff readopts and realleges all of the paragraphs of this Complaint as if fully set forth herein.

119.    At all times relevant hereto, MC was in the business of marketing, selling, and distributing tires, including the Subject Tire that caused Mr. Wescott's catastrophic injuries. Upon information and belief, MC knew or had reason to know that the Subject Tire would be affixed to a commercial truck at the time they sold the Subject Tire and that the purchaser was in fact relying on MC's skill, judgment, and implied warranty of the Subject Tire's fitness for that particular purpose.

120.    Accordingly, MC impliedly warranted that the Subject Tire was suitable for the particular purpose of being affixed to a commercial vehicle.

121.    At all times relevant, Mr. Wescott used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of MC in operating the Subject Truck.

122.    MC breached the above-referenced implied warranty as to the Subject Tire in that the Subject Tire was unreasonably dangerous and unfit to be affixed to a commercial truck at the time it left MC's possession for the following reasons:

  a.   The Subject Tire's unfit design lacked countermeasures for tread/belt separation, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019; and

  b.   The Subject Tire's tread and belt package was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on June 20, 2019, as alleged in Paragraph 17.

123.    Mr. Wescott, as the operator and/or occupant of a commercial truck, was a person who would foreseeably be injured by MC's breach of the implied warranty referenced in this Count. MC's breach of that warranty directly and proximately caused the accident on June 20, 2019, and Mr. Wescott's resulting catastrophic injuries.

124.    As a direct and proximate result of MNA's negligence, Mr. Wescott was injured and suffered the following damages:

a.  Serious and permanent bodily injury;

b.  Physical disfigurement;

c.  Physical pain and mental anguish;

d.  Inconvenience;

e.  Medical expenses.

Accordingly, Plaintiff demands judgment against MC for damages, together with interest and costs, and further demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,
MARGIE LOUISE WESCOTT


_____/s/_____
Jonathan E. Halperin (VSB No. 32698)
Andrew Lucchetti (VSB No. 86631)
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA  23059
Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
andrew@hlc.law
*Counsel for Plaintiff*